IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JIM P. MOORE, II. | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-12-1409-D |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
|    Defendant. | ) | |

## REPORT AND RECOMMENDATION

Jim Moore ("Plaintiff") has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits under the Social Security Act. United States District Judge Timothy D. DeGiusti referred this matter for proceedings consistent with 28 U.S.C. § 636(b)(3) and it is now before the undersigned Magistrate Judge. The undersigned has reviewed the pleadings, administrative record ("AR"), and parties' briefs, and recommends that the Commissioner's decision be affirmed.

**I.   Administrative proceedings.**

In his application for benefits, Plaintiff alleged that his impairments

---

[1] Effective February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this action.

became disabling on February 15, 2007. AR 152. Plaintiff's claim was denied and, at his request, an Administrative Law Judge ("ALJ") conducted a hearing. In his August 2011 decision, the ALJ found that Plaintiff was not disabled before September 30, 2007, the date he last met the insured status requirement. *Id.* at 66, 71-72. The Social Security Administration Appeals Council declined Plaintiff's request for review, *id.* at 1-5, and Plaintiff now seeks review in this Court. Doc. 1.

## II. Disability determination.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps in detail).

Because Plaintiff seeks only disability insurance benefits, he "must establish his disability prior to the expiration of his insured status." *Miller v. Chater*, 99 F.3d 972, 975 (10th Cir. 1996). So, Plaintiff bears the initial burden of proving that sometime between February 15, 2007 to September 30, 2007, he

2

had one or more severe impairments. *See* 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that he could not engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retained the capacity to perform a different type of work and that such a specific type of job existed in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

### III. Analysis.

#### A. Standard for review.

This Court's review is limited to whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. *See Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quotation omitted). In determining whether substantial evidence exists, the Court "will not reweigh the evidence." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

#### B. Plaintiff's developed claims.

The undersigned has reviewed Plaintiff's developed claims in the following order. First, Plaintiff alleges that the ALJ: (a) "cherry picked" Dr. Kent Jordan's consultative findings and failed to explain why he gave Dr. Jordan's

3

findings only "some weight," and (b) did not incorporate Dr. Jordan's findings regarding Plaintiff's functional limitations in the RFC or hypothetical question to the vocational expert ("VE").  Doc. 9, at 9-11, 17-19, 21-22, 25-26.[2]  Second, Plaintiff presents intertwined arguments that Dr. Anita Chatigny's neuropsychological exam provides substantial support that Plaintiff was disabled prior to September 30, 2007, and that the ALJ failed to incorporate Dr. Chatigny's findings in the RFC and hypothetical question to the VE.  *Id.* at 11-14, 17-19, 21-22.  Plaintiff also suggests that the ALJ mischaracterized Dr. Chatigny's findings as "normal."  *Id.* at 24-25.  Third, Plaintiff alleges that the ALJ erred in finding that his episodes of decompensation were "'not repeated'" for purposes of "paragraph C" of Listings 12.03 and 12.04.  *Id.* at 23-24.  Fourth, Plaintiff challenges the ALJ's credibility findings.  *Id.* at 26-27.

### 1. The ALJ's alleged errors in assessing Dr. Jordan's consultative findings.

As noted above, Plaintiff alleges that the ALJ committed numerous errors related to Dr. Jordan's consultative findings.  These alleged errors include: (a) "cherry-picking" the evidence and failing to explain the weight given to the psychologist's findings, and (b) failing to include the functional limitations in the RFC and the hypothetical question to the VE.  Doc. 9, at 9-11, 17-19, 21-22, 25-

---

[2] Page citations referenced the Court's CM/ECF pagination.

26. The undersigned finds that the first two alleged improprieties, even if errors, are harmless. Further, the ALJ had no duty to include Dr. Jordan's findings in the RFC or hypothetical question to the VE.

> **a. The ALJ's alleged selective reliance on Dr. Jordan's findings and failure to explain the weight given to the consultative examiner's opinion.**

When the Court can confidently say that no reasonable factfinder could have resolved the disability issue in any other way, it may find an ALJ's errors, if any, harmless. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). This principle applies here because Dr. Jordan's consultative examination was performed in May 2010 – almost three years after Plaintiff's insured status expired – and, importantly, the opinion contains no retroactive findings or diagnosis. AR 292-98. Indeed, the opinion provides no substantial evidence that Plaintiff was disabled prior to September 30, 2007. *Id.*; *see also Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990) (holding that a "retrospective" medical opinion that failed to identify a disability existing before the claimant's insured status expiration did not constitute substantial evidence); *Candelario v. Barnhart*, 166 F. App'x 379, 382 (10th Cir. 2006) (noting that because the claimant was required to establish that he was disabled prior to his date his insured status expired, "the only evidence relevant to his claim

5

is that which pertains to his condition on or before that date"). Because Dr. Jordan's opinion does not constitute substantial evidence, the undersigned can confidently say that the ALJ could not have reached a different disability outcome even if he had engaged in a more thorough discussion regarding the opinion's weight or had he not (allegedly) "cherry picked" Dr. Jordan's findings. Thus, neither argument warrants reversal.

> **b. The ALJ's failure to include Dr. Jordan's functional findings in the RFC and hypothetical question to the VE.**

For the same reason, the undersigned finds no error in the ALJ's failure to include Dr. Jordan's findings both in the RFC and the ALJ's hypothetical question to the VE. As just discussed, Dr. Jordan's May 2010 opinion provides no substantial evidence that Plaintiff was disabled prior to September 30, 2007. Consequently, the ALJ had no duty to include any of Dr. Jordan's purposed limitations in the RFC. *See, e.g., Best-Willie v. Colvin*, 514 F. App'x 728, 737 (10th Cir. 2013) (finding that where physicians' opinions had been discounted, "the ALJ did not err in failing to include additional limitations [based on those opinions] in [the claimant's] RFC assessment"). And, it is well settled that the hypothetical question to the VE need *only* include "those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). Because Dr. Jordan's report contains no opinion regarding Plaintiff's functional

6

limitations before September 30, 2007, the ALJ had no duty to include the consulting psychologist's findings in the hypothetical question to the VE. *See Newbold v. Colvin*, 718 F.3d 1257, 1268 (10th Cir. 2013) (finding no error in the ALJ's failure to include a physician's recommended functional limitations in the hypothetical question to the VE where the opinion had "only diminished weight" and provided no substantial evidence to support said limitations). Again, the undersigned finds no ground for reversal.

### 2. Plaintiff's claims regarding the ALJ's alleged errors in assessing Dr. Chatigny's opinion.

Plaintiff also raises several intertwined arguments regarding the ALJ's assessment of Dr. Chatigny's opinion. For example, Plaintiff suggests that the opinion provides substantial evidence that he was disabled prior to his date last insured. Doc. 9, at 11-14. Accordingly, he alleges that the ALJ erred in not incorporating Dr. Chatigny's findings in the RFC or hypothetical question to the VE. *Id.* at 17-19, 21-22. Plaintiff also claims that the ALJ mischaracterized Dr. Chatigny's findings as "normal." *Id.* at 24-25. The undersigned disagrees with each argument.

In August 2006, Dr. Chatigny conducted a neuropsychological exam to evaluate Plaintiff's cognitive functions and functional abilities. AR 267. In her summary, she stated in relevant part:

7

> This is a 'normal' neuropsychological test profile of a 46 year old . . . who has a history of chronic crystal methamphetamine abuse. The patient is functioning within the 'Average' range of intelligence. Compared to indicators of pre-morbid cognitive abilities, there appears to be a weakening of attention and concentration ability. Compensatory effort is in place and global integrity is preserved. As Mr. Moore is in the acute phase of recovery, some level of spontaneous recovery is anticipated as he remains abstinent from drugs. However, it is difficult to fully project what level of functional return he is likely to achieve as this is largely dependent upon the work he pursues to minimize the impact of transient influences upon cognitive effort.
>
> Centralized cognitive weakness seen in this profile are represented primarily by diminished abilities of attention and concentration. Verbal and visual processing weakness impede the effort to scan, organize and recall newly-learned information. Mr. Moore exercises effective common-sense reasoning, and has the cognitive flexibility to incorporate new information and modify existing approaches to problem-solving.
>
> Transient influences have a profound effect on this patient's ability to direct and sustain focus. Such emotional sensitivities have the potential for contributing to high levels of distractibility. As the patient is faced with challenge, he becomes anxious and has a tendency to disengage from effort. This tendency influences his ability to effectively register visual and verbal information.

AR 271-72.[3]

The ALJ reviewed this report and found that it was consistent with Plaintiff's RFC – that is, his ability to perform "simple work in a non-public environment with no intense interpersonal contact with others." AR 68, 70. The

---

[3] The record presents Dr. Chatigny's report out of sequential order. For the proper format, read: AR 267, 266, 265, 264, 269, 263, 262, 261, 260, 259, 258, 257, 270, 272, 271.

undersigned agrees. *See, e.g., Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (noting that "simple" work is consistent with "level-two reasoning" which is defined as having the ability to "'apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with standardized situations with occasional or no variables in or from the situations encountered on the job'") (citations and brackets omitted).

Plaintiff points out that Dr. Chatigny had noted that Plaintiff became overwhelmed during the examination and requested "smoke breaks every 15-20 minutes." Doc. 9, at 12. Based on that language, Plaintiff believes that the ALJ should have found that Plaintiff was unable to work for more than fifteen minutes at a time and should have included that limitation in the RFC and hypothetical question to the VE. *Id.* at 14, 18-19, 25-26. But Dr. Chatigny never opined that Plaintiff was *incapable* of working more than fifteen minutes at a time. Further, the ALJ accounted for Plaintiff's distractibility in the RFC assessment, finding Plaintiff "limited to simple work in a non-public environment with no intense interpersonal contact with others." AR 68.

In sum, the ALJ considered Dr. Chatigny's findings, properly characterized Dr. Chatigny's terminology – including her use of the phrase "normal" – and incorporated those findings into Plaintiff's RFC assessment. *Id.* 68, 70. As noted above, it is not this Court's function to re-weigh this evidence

and the undersigned finds no basis for reversal.

### 3. Plaintiff's claim involving an error in assessing the episodes of decompensation for purposes of paragraph C.

In relevant part, the ALJ considered whether Plaintiff's mental impairment satisfied "paragraph C" for Listings 12.03 and/or 12.04. AR 67. He found that it did not, because Plaintiff had not experienced "repeated episodes of decompensation of extended duration." *Id.* Plaintiff argues that this finding is inconsistent with the ALJ's earlier notation that "the claimant had experienced one to two episodes of decompensation" in "April of 2006 and in 2009." *Id.* The undersigned disagrees.

To satisfy the "paragraph C" criteria, a claimant must have "three episodes [of decompensation] within 1 year." 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.00(C)(4); *see also Chrismon v. Colvin*, No. 12-5184, 2013 WL 4437616, at *2 & n.1 (10th Cir. 2013). As the ALJ noted, Plaintiff had two episodes three years apart. Accordingly, the undersigned finds no inconsistency or ground for reversal based on this argument.

### 4. Plaintiff's claims challenging the ALJ's credibility assessment.

Plaintiff maintains that the ALJ: (a) "did not affirmatively link" the evidence to the credibility findings, Doc. 9, at 26-27; (b) got "the credibility

10

process backwards," *id.*; (c) improperly relied on Plaintiff's testimony that he could perform simple work, *id.* at 19-21; and, (d) inaccurately found a lack of medical treatment from February 15, 2007 to September 30, 2007. *Id.* at 22-23.[4] The undersigned finds no grounds for reversal in any of these arguments.

### a. The ALJ's alleged failure to affirmatively link the evidence to the credibility findings.

Plaintiff believes that the ALJ failed to affirmatively link the evidence to the credibility findings, and even suggests that the ALJ "wholly failed to specify any evidence that caused him to disbelieve" Plaintiff's testimony. *Id.* at 28.

An ALJ's reasons for credibility determinations "must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p, 1996 WL 374186, at *4; *see also Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (holding that credibility findings "'should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings'") (citation omitted). In other words, the ALJ must "'explain why the specific evidence . . . led him to conclude claimant's subjective complaints were not credible.'" *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (quotation omitted). Plaintiff's allegation that the ALJ failed to explain his reasons for discounting

---

[4] Plaintiff does not discuss the latter two alleged errors in the credibility context. Because the ALJ made the comments as he described Plaintiff's testimony and assessed his credibility, AR 68-69, the undersigned addresses them here.

11

Plaintiff's credibility is entirely inaccurate.

For example, the ALJ specifically stated that Plaintiff's credibility was diminished based on: (1) Plaintiff's admission that he did not follow a recommendation to begin seeing a psychiatrist in 2007 upon release from a drug rehabilitation home and also "stopped taking all psychotropic medications"; (2) Plaintiff's admission that he worked after his alleged onset date, suggesting greater daily activities than Plaintiff reported; (3) Plaintiff's daily activities, including "group therapy, shopping, doing household chores and cooking" and volunteering at the sober living home, replicated those tasks "necessary for obtaining and maintaining employment"; and (4) Plaintiff's 2006 medical treatment was "related to a drug rehabilitation program" that he sought out in "an attempt to avoid incarceration and/or criminal charges" and Plaintiff did not otherwise seek any mental health treatment "between the early part of 2007 and the end of 2009." AR 69.

Based on this language, the undersigned finds that the ALJ did in fact affirmatively link the evidence to the credibility findings and explained why the specific evidence led him to believe that Plaintiff was less than fully credible.

      **b.**    **The ALJ's alleged failure to consider credibility in the proper order.**

Plaintiff also complains that the ALJ impermissibly reached the RFC

decision first and *then* assessed Plaintiff's credibility. Doc. 9, at 27-28. Plaintiff primarily takes issue with the ALJ's statement that:

> [T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

*Id.*; *see also* AR 69. Relying on the Seventh Circuit's decision in *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), Plaintiff argues that this language shows that the ALJ "apparently judged the credibility of the claimant's testimony by comparing it to a pre-determined RFC." Doc. 9, at 27. The undersigned disagrees.

In *Bjornson*, the Seventh Circuit noted that the above quoted language "implies that ability to work is determined first and is then used to determine the claimant's credibility." 671 F.3d at 645-46. Here, however, it is clear that the ALJ engaged in the proper sequential process. That is, after the ALJ set out the RFC assessment, he then detailed how he had arrived at such a finding. AR 68-69. Specially, the ALJ thoroughly summarized Plaintiff's testimony, explained why he found it less than credible, and then linked his findings to the medical evidence. *Id.* Thus, the fact that the ALJ used disapproved-of language is not reversible error. *See Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 796 (10th Cir. 2013) (rejecting claimant's challenge to the sequential order of the

13

RFC and credibility assessments because "although the ALJ's opinion recited his RFC finding before discussing credibility, there is no indication that the ALJ did not factor in [the claimant's] credibility" and also noting that the ALJ's use of boilerplate language is "'insufficient' only 'in the absence of a more thorough analysis'" (citation omitted)).

### c. The ALJ's alleged improper reliance on Plaintiff's testimony.

Plaintiff also alleges that the ALJ improperly relied on Plaintiff's testimony that he could perform a simple job. Doc. 9, at 19-21. Plaintiff argues both that the ALJ mischaracterized the testimony and that the testimony is unreliable because Plaintiff is mentally ill.[5] The undersigned finds no reversible error.

Notably, it is not entirely clear that the ALJ ever *relied* on Plaintiff's statement that he could perform a simple job. The ALJ mentioned it, but did so in summarizing Plaintiff's testimony. AR 68. The ALJ never mentioned the testimony again while discrediting Plaintiff's credibility. *Id.* 68-69. Regardless, even if the ALJ did rely on the testimony, and even if he mischaracterized it,[6]

---

[5] Inconsistently, Plaintiff elsewhere encourages reliance on his testimony. Doc. 9, at 14-17.

[6] The undersigned agrees that while Plaintiff initially stated that he could have performed simple work, he thereafter wavered on the question. AR 21-22, 24. In sum, Plaintiff never unequivocally said that he could perform

the undersigned has already found that there is substantial evidence to support the credibility determination. And, because substantial evidence supports the credibility determination, any concerns regarding the ALJ's alleged mischaracterization of the testimony are immaterial. *See, e.g., Branum v. Barnhart*, 385 F.3d 1268, 1274 (10th Cir. 2004) ("While we have some concerns regarding the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain minimal household chores, we conclude that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record."); *Montoya v. Astrue*, Civil Action No. 11-cv-00118-LTB, 2012 WL 1326677, at *7 (D. Colo. Apr. 17, 2012) (unpublished order) (affirming in part on grounds that "[a]lthough the ALJ misstated when Plaintiff first complained of post-surgery groin pain, there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff was not very credible").

### d. The ALJ's reliance on the lack of medical treatment.

Finally, Plaintiff suggests that the ALJ inaccurately found a lack of medical evidence prior to the date last insured. Doc. 9, at 22. He then redocuments his medical treatment in April 2006 to January 2007, October 2008, and November 2009 to December 2009, to dispute the ALJ's finding. *Id.* at 22-

---

simple work.

23. But as discussed above, the ALJ had already noted that Plaintiff's treatment in April 2006 to January 2007, was "related to a drug rehabilitation program" entered to "avoid incarceration and/or criminal charges," AR 69, – a fact Plaintiff does not dispute. And, Plaintiff's reliance on treatment *after* September 2007 underscores the accuracy of the ALJ's findings. Accordingly, Plaintiff has not established that the ALJ erred when he found a significant lack of mental heath treatment prior to Plaintiff's date last insured. Moreover, the ALJ was entitled to rely on Plaintiff's lack of medical treatment during the relevant time period in assessing credibility. *See Kruse v. Astrue*, 436 F. App'x 879, 886 (10th Cir. 2011) ("[W]e see no error in the ALJ's consideration of the lack of objective medical evidence supporting [the claimant's] subjective allegations of disabling pain [in the credibility analysis]."). For these reasons, the undersigned finds no basis for reversal.

### B. Plaintiff's undeveloped arguments.

After arguing that the ALJ erred in counting the episodes of decompensation, Plaintiff states:

> Next, *See* 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). Specifically, listing 12.04(3)C(1)(2)(3). This is that amazing case that meets all three of the listings [1-3] and Mr. Moore is only required to meet one. This is further reason why the ALJ had to cherry-pick the evidence to come to his flawed conclusion. Additional error.

16

Doc. 9, at 24.

Thereafter, Plaintiff writes:

> The ALJ stated that an MRFC required a more detailed assessment and then failed to perform one. (TR 68) The boilerplate is not analysis, it is error.

*Id.* at 26. The undersigned has not addressed these undeveloped claims.

In order to attain judicial review, it is not enough to simply raise an issue. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (finding that "perfunctory complaints" which are not adequately framed or developed are insufficient to invoke review). Regarding these two claims, Plaintiff fails to develop any factual or legal bases for reversal and the undersigned will not speculate or develop the arguments for him. *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (declining to speculate on claimant's behalf when argument on an issue is "insufficiently developed").[7]

## IV. Recommendation and notice of right to object.

For the reasons discussed above, it is recommended that the Commissioner's decision be affirmed.

---

[7] Plaintiff begins his opening brief suggesting that his methamphetamine abuse caused a condition known as Dysexecutive Syndrome and spends three pages explaining the syndrome's effects. Doc. 9, at 6-9. He then states that the ALJ "obviously did not understand the case." *Id.* However, Plaintiff does not raise any specific argument in this context, and the undersigned notes that there is no medical evidence that Plaintiff has ever been diagnosed with Dysexecutive Syndrome.

The parties are advised of their right to object to this report and recommendation by the 17th day of November, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 29th day of October, 2013.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE